UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-4788 (DSD/DTS)

Erich J. Rosenwinkel,

       Plaintiff,

v.  **ORDER**

Entrust Datacard Corporation,

       Defendant.

    Michael J. Minenko, Minenko Law, LLC, 2051 Killebrew Drive, Suite 611, Bloomington, MN 55425, counsel for plaintiff.

    Lillian Terese Dobson, Marilyn J. Clark, Dorsey & Whitney, LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Entrust Datacard Corporation (Datacard). After a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion.

**BACKGROUND**

This employment discrimination dispute arises out of Datacard's decision to terminate plaintiff Erich J. Rosenwinkel's employment.

**I. The Parties**

Datacard "provides solutions for identity payment and security applications to primarily financial institutions, governments and other commercial enterprises." Steele Dep. at 6:22-7:2. In

January 2013, Datacard hired Rosenwinkel for a sales position. Rosenwinkel Dep. at 68:20-69:17. In April 2016, Datacard promoted Rosenwinkel to North America Sales Director for Identity and Access Management.[1] Id. at 74:11-75:4. In that role, Rosenwinkel was responsible for developing and maintaining relationships with third parties who sell Datacard products (referred to as "channel partners"). Id. at 79:11-80:2; Mattia Decl. ¶ 6; Mattia Decl. Ex. 1. He traveled extensively for the position and only spent approximately thirty percent of his time at Datacard's corporate offices. Rosenwinkel Dep. at 832:23-83:24. Rosenwinkel initially reported to Kathleen Phillips and later to Patrick Steele. Id. at 76:2-77:16.

**II. Performance**

Datacard asserts that it began to have concerns about Rosenwinkel's performance in 2017. The record is unclear as to exactly when those concerns arose, however. According to Ellen Mattia, Senior Human Resources Partner, Steele first told her about Rosenwinkel's performance issues in the spring of 2017. Mattia Decl. ¶ 5. But Steele testified that he first received negative feedback about Rosenwinkel from two channel partners - Plasco and Identisys - and from internal sources sometime in the summer of 2017. Steele Dep. at 75:7-76:12, 115:11-117:7, 123:19-124:4.

---

[1] In the interim, Rosenwinkel was promoted to channel account manager. Id. at 70:7-11. It is undisputed that Rosenwinkel was at all times an at-will employee. Id. at 75:5-9.

2

Other Datacard employees vaguely state that Rosenwinkel had performance issues "[i]n the last year of [his] employment," Jones Decl. ¶ 4, "in the early part of 2017," Ball Decl. ¶ 6, "[o]n multiple occasions in 2017," id. ¶ 8, and "in the early months of 2017 ... and several months later." Smolinksi Decl. ¶¶ 6, 14.

Although Steele testified that he had numerous conversations with Rosenwinkel about his performance and that Rosenwinkel understood that he could be fired, Rosenwinkel denies having any such conversations.[2] See Steele Dep. at 41:14-42:14, 75:19-76:10, 124:5-22, 138:17-18; Rosenwinkel Dep. at 140:25-142:14, 184:21-185:3. Rosenwinkel does recall that on September 13, 2017, Steele vaguely mentioned the need to "get these guys to like you," but Rosenwinkel did not know who Steele was referencing and, when asked, Steele declined to elaborate. Rosenwinkel Dep. 137:5-140:24, 185:9-186:20. Rosenwinkel also denies causing problems with any channel partner or that he was ever reprimanded due to his interactions with those partners. Rosenwinkel Decl. ¶¶ 3-10; Rosenwinkel Dep. at 124:10-125:21, 130:16-132:24, 134:16-135:3, 136:11-24, 140:25-142:14, 149:22-150:3.

Steele did not document his alleged conversations with Rosenwinkel and admits that no other writings reflect Datacard's concerns about Rosenwinkel's performance. Steele Dep. at 138:17-

---

[2] Due to the disposition of this motion, the court will not set forth in detail all of the factual disputes regarding Rosenwinkel's performance.

3

139:19. Steele also did not document his conversations with channel partners or internal employees in which they allegedly complained about Rosenwinkel. Id. at 116:3-121:3, 140:23-141:4.

The only document addressing Rosenwinkel's performance is his 2017 performance review.[3] See Clark Decl. Ex. 3 at 1. Steele drafted the review in June 2017, but it covers the period of Datacard's 2017 fiscal year - April 1, 2016, to March 31, 2017. See id. at 1. Steele gave Rosenwinkel an "Achieving" rating and commented favorably on Rosenwinkel's performance throughout the review. See Clark Decl. Ex. 3 at 1-3, 5-6, 13-17. He also noted that Rosenwinkel needed to continue to improve "partner relationships and feeling of trust across the board" and to "re-establish trust" with channel partners. Id. at 3, 16. Those comments, however, did not reflect concerns about Rosenwinkel's performance or ability to establish trust with channel partners, but instead referenced Datacard's commitment to improving its trustworthiness as a company. See Steele Dep. at 130:8-135:15; Rosenwinkel Dep. at 80:3-81:6, 167:2-168:22.

**III. Jury Duty**

On May 24, 2017, Rosenwinkel notified Steele and Mattia that he had been summoned to appear for federal grand jury service on

---

[3] According to Rosenwinkel, Datacard is a "document-oriented" company that requires performance issues and related discussions to be documented in writing. Rosenwinkel Dep. at 27:11-19, 95:7-9; see also Steele Dep. at 42:15-23. If true, the lack of documentation here is curious.

4

June 20. Mattia Decl. Ex. 2. Steele responded "Ok we will figure it out when I return. It will be what it will be." Id.

On June 23, Rosenwinkel told Steele and Mattia that he had been selected to serve on the grand jury for at least eleven, and up to eighteen, months and that he would be required to spend two to three days per month at the courthouse. Id. Ex. 3. He sent each of them the schedule provided by the court and said that he would manage his work and travel accordingly. Id. According to Rosenwinkel, Steele and Mattia (and others) reacted negatively to his jury service, which worried him. Rosenwinkel Dep. at 19:4-20:10, 35:12-18, 64:8-25. Steele and Mattia deny having had any concerns about Rosenwinkel's jury service and assert that they never perceived it to be a problem.[4] Steele Dep. at 148:19-152:4; Mattia Decl. ¶ 12. Several other people Rosenwinkel claims had issues with his jury service deny being aware that he was serving on a jury. See Jones Decl. ¶ 13; Ball Decl. ¶ 13; Smolinski Decl. ¶ 18.

Rosenwinkel does not claim that he was subject to additional negative comments throughout his jury service, but asserts that he began to feel disconnected because he could not fully participate in all meetings and industry events. Rosenwinkel Dep. at 67:25-

---

[4] Datacard policy supports jury service over and above what law requires by ensuring that employees are compensated and provided benefits during that service. Mattia Decl. Ex. 5. There is no dispute that Rosenwinkel received all benefits due to him under that policy.

68:6. Given that he was often out of the office due to the nature of his job, Steele and others did not specifically note his absence for jury service. Steele Dep. at 154:3-155:4; Ball Decl. ¶ 14; Smolinksi ¶ 19.

## IV. Termination

In September 2017, Steele discussed ongoing concerns about Rosenwinkel's performance with Mattia. Mattia Decl. ¶ 18. They explored the possibility of putting Rosenwinkel on a performance improvement plan, but concluded that it would be unhelpful to do so because they believed that Rosenwinkel lacked the ability to effectively manage and develop client relationships. Mattia Decl. ¶¶ 19-20; Steele Dep. at 141:5-13. After consulting further with the human resources department, Steele ultimately determined that he needed to terminate Rosenwinkel. Mattia Decl. ¶ 21; Steele Dep. at 66:3-68:4, 106:25-107:23.

Steele and Mattia met with Rosenwinkel on September 29, and terminated his employment. Mattia Decl. ¶ 22; Steele Dep. at 102:12-103:10. According to Rosenwinkel, Steele told him that "[t]hings aren't working out" and that Datacard "was taking the business in a different direction." Rosenwinkel Dep. at 219:14-16. Rosenwinkel responded that he believed Datacard was terminating him based on his jury service. Mattia Decl. ¶ 24; Steele Dep. at 105:2-8; Rosenwinkel Dep. at 220:13-16. Steele denied that was the case and says that he then told Rosenwinkel he was being terminated

for poor performance. Mattia Decl. ¶ 25; Steele Dep. at 105:2-8. Rosenwinkel appears to deny that Steele told him his termination was due to performance issues. See Rosenwinkel Dep. at 219:1-220:22.

On October 9, Rosenwinkel requested, under Minn. Stat. § 181.933, that Datacard provide a written statement of the truthful reason for his termination. Datacard responded as follows: "Your customers lost confidence and trust in you and your colleagues no longer thought you could be successful leading the business for which you were responsible." Mattia Decl. Ex. 4. Datacard has since elaborated that Rosenwinkel was also terminated for his "repeated fail[ure] to adhere to Company policies and procedures, including, for example, repeated instances of poor or no communication and failure to follow direction and guidelines from his superiors." Minenko Decl. Ex. 5 at 10-11.

**V. This Action**

On October 24, 2017, Rosenwinkel commenced this action alleging retaliatory discharge in violation of the Jury Systems Improvement Act (JSIA), 28 U.S.C. § 1875, and its Minnesota counterpart, Minn. Stat. § 593.50. Datacard now moves for summary judgment.

**DISCUSSION**

**I. Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Merits**

The JSIA prohibits employers from terminating employment "by reason of" an employee's jury service.[5] 18 U.S.C. § 1875. An employee alleging termination due to jury service must prove that the jury duty was the "but-for" cause for the termination. Crowley v. Pinebrook, Inc., No. 08-3427, 2010 WL 4963004, at *3 (D. Md. Dec. 1, 2010)[6] (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (concluding that requiring that adverse action be taken "by reason of" a protected activity requires the employee to prove that the protected activity was the "but-for" cause of the adverse action)).

The court finds it appropriate to apply the burden-shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973), to JSIA claims where, as here, there is no direct evidence of retaliatory motive. See Hackney v. Jack Daubert, M.D., P.A., No. 11-80856, 2012 WL 1600563, at *8 fn.9 (S.D. Fla. May 7, 2012) (applying McDonnell Douglas evidentiary framework to JSIA); Papalia v. Milrose Consultants, Inc., No. 09-9257, 2011 WL 6937601, at *13

---

[5] The JSIA and Minn. Stat. § 593.50 are similarly worded, so the court will construe them coextensively, as is traditionally the case in the employment discrimination context. See Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1124 n.2 (8th Cir. 2000) (Title VII and MHRA); Elkharwily v. Mayo Holding Co., 84 F. Supp. 3d 917, 928 (D. Minn. 2015) (Title VII and state retaliation claim).

[6] The Eighth Circuit Court of Appeals has yet to analyze the JSIA, so the court turns to cases outside this jurisdiction for guidance.

(S.D.N.Y. Dec. 29, 2011) (same); Shaffer v. ACS Gov't Servs., Inc., 454 F. Supp. 2d 330, 334-35 (D. Md. 2006) (same); see also Lors v. Dean, 746 F.3d 857, 867 (8th Cir. 2014) (applying McDonnell Douglas to retaliation claim under the ADA).

Under McDonnell Douglas, Rosenwinkel must first establish a prima facie case of discrimination by showing that: (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity. EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003). If he establishes a prima facie case, the burden shifts to Datacard to produce "a legitimate, non-retaliatory reason" for terminating Rosenwinkel. Id. at 773. If Datacard satisfies its burden, Rosenwinkel must then present evidence that Datacard's proffered reason is pretextual. Id.

**A.  Prima Facie Case**

There is no question that Rosenwinkel meets the first two elements of his prima facie case: he engaged in statutorily protected activity by serving on a grand jury and he was terminated. The parties dispute, however, whether Rosenwinkel has established a causal connection between his jury service and his termination.

The court finds that the temporal proximity between Rosenwinkel's jury service and his termination is sufficient to

meet the causal requirement. Datacard terminated Rosenwinkel's employment during his jury service, which means that the adverse action coincided with the protected activity. Under these circumstances, and viewing the facts in the light most favorable to Rosenwinkel, he has established the final element of his prima facie case. See Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992) ("The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive."); see also Shaffer, 454 F. Supp. 2d at 335 (finding that the causal element satisfied where plaintiff was fired while serving grand jury duty).

### B. Non-Retaliatory Reason for Termination

An employer's burden of showing a legitimate, nondiscriminatory reason for termination is not onerous. Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012). Datacard has provided sufficient evidence to meet this low burden by submitting testimony questioning Rosenwinkel's performance. Thus, the burden shifts back to Rosenwinkel to demonstrate that Datacard's proffered explanation is pretextual, and that his jury service is the true reason for his termination.

### C. Evidence of Pretext

Pretext is "typically shown by evidence that the employer's 'explanation is unworthy because it has no basis in fact,' or that

'a prohibited reason more likely motivated' the adverse employment action." Chambers v. Travelers Cos., Inc., 668 F.3d 559, 567 (8th Cir. 2012) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir. 2011)). "Pretext can also be demonstrated by showing that the employer shifted its explanation, that the employee received a favorable review shortly before termination or that the employer deviated from policies." Sieden v. Chipotle Mexican Grill, Inc., 846 F.3d 1013, 1017 (8th Cir. 2017).

Rosenwinkel has set forth ample facts credibly challenging Datacard's stated reasons for terminating him. First, there are genuine questions as to the accuracy and extent of the performance issues identified by Datacard, which served as the basis for its stated decision to terminate Rosenwinkel. The court will not repeat each material fact in dispute, but notes that there are many. Of particular note is Rosenwinkel's positive performance review submitted just a few months before his termination and the lack of documentation regarding his alleged poor performance. A jury, and not the court, must consider those facts and decide whether Datacard's stated reasons for it adverse employment action were pretextual.

Second, Datacard's reasons for terminating Rosenwinkel have expanded, if not shifted, over time. According to Rosenwinkel, Steele initially told him that Datacard was simply taking the business in a different direction. Datacard thereafter told

12

Rosenwinkel that he was terminated for poor performance. Then, during discovery, Datacard disclosed that Rosenwinkel was also terminated for failing to follow company policy. It may well be that Datacard has simply elaborated on its decisions for terminating Rosenwinkel as time has gone on rather than changed its rationale, but a jury must determine which is the case.

Third, the court cannot disregard Rosenwinkel's testimony that certain Datacard employees - including his supervisor and HR manager - made negative comments about his jury service. Although some of those comments may seem innocuous, a jury could conclude otherwise. Given the facts in dispute with respect to pretext, the court simply cannot conclude as a matter of law that Rosenwinkel's jury service was not the but-for cause of his termination. As a result, the court must deny summary judgment.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 19] is denied.

Dated: April 9, 2019

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court